**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| CHARLES MANLEY,<br>*Plaintiff-Appellant*,<br><br>v.<br><br>MICHAEL ROWLEY, Officer; ALAN ZIMMER; GLENN HAMMOCK; SCOTT MANNING; STATE OF NEVADA, Nevada Department of Corrections; E. K. MCDANIEL; RENEE BAKER, Warden,<br>*Defendants-Appellees.* | No. 15-15320<br><br>D.C. No.<br>3:11-cv-00636-RCJ-WGC<br><br>OPINION |

Appeal from the United States District Court
For the District of Nevada
Robert C. Jones, District Judge, Presiding

Argued and Submitted December 14, 2016
San Francisco, California

Filed January 30, 2017

Before: DIARMUID F. O'SCANNLAIN, RONALD M. GOULD, and MILAN D. SMITH, JR., Circuit Judges.

Opinion by Judge Milan D. Smith, Jr.;
Partial Concurrence and Partial Dissent by
Judge O'Scannlain

# SUMMARY[*]

## Prisoner Civil Rights

The panel reversed in part and affirmed in part the district court's summary judgment and remanded with instructions to assign this 42 U.S.C. § 1983 prisoner civil rights action, alleging Eighth and Fourteenth Amendment claims for excessive force and deliberate indifference, to a different judge.

Reversing the district court's summary judgment on the excessive force claim, the panel held that the record indicated that a genuine dispute of material fact existed regarding whether appellees' use of force resulted in the unnecessary and wanton infliction of pain or suffering.

Affirming the district court's summary judgment on plaintiff's deliberate indifference claim against Officer Zimmer for failure to intervene, the panel held that plaintiff failed to timely exhaust his administrative remedies as to that claim.

The panel instructed that on remand the case be reassigned to different judge. The panel concluded that the district judge would have substantial difficulty in putting out of his mind previously expressed views regarding past trial outcomes when presiding over this matter on remand. The panel further held that the district judge's stated position

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

confirmed that reassignment was necessary to preserve the appearance of justice.

Concurring in part and dissenting in part, Judge O'Scannlain concurred in the decision on the merits. Judge O'Scannlain dissented from the panel's decision to reassign on remand, stating that although the district court's judge's inappropriate comments regarding past trials were highly unusual and logically incoherent, they did not warrant the extraordinary measure of reassignment.

## COUNSEL

Matthew Cormack (argued), Katherine Cheng, and Greg Andres, Davis Polk & Wardwell LLP, New York, New York, for Plaintiff-Appellant.

Lawrence VanDyke (argued), Solicitor General; Clark G. Leslie, Assistant Solicitor General; Adam Paul Laxalt, Attorney General; Office of the Attorney General, Carson City, Nevada; for Defendants-Appellees.

## OPINION

M. SMITH, Circuit Judge:

Plaintiff-Appellant Charles Manley challenges the district court's entry of summary judgment for Defendants-Appellees, who are various prison officers and officials, on Manley's Eighth and Fourteenth Amendment claims for excessive force and deliberate indifference. For the reasons given in this opinion, we affirm in part, reverse in part, and

remand with instructions to assign this case to a different district judge.

## FACTUAL AND PROCEDURAL BACKGROUND

This matter began on July 2, 2009 as the result of an altercation between Manley and his cellmate at Ely State Prison (ESP). Manley claims that he fought in self-defense, and that he used the prison's intercom system multiple times to contact Correctional Officer Zimmer and request removal from the cell. Zimmer denies receiving any such requests.

Some time later, Appellees Officer Rowley and Lieutenant Jones "responded to reports of a fight" in Manley's cell. Manley and his cellmate were extracted from their cell, and officers video-recorded the extraction, as required by Nevada Department of Corrections (NDOC) Administrative Regulation (A.R.) 405.07. Because only one camera was used, after Manley's extraction, the camera panned away from Manley (in alleged violation of prison policy) to focus on his cellmate's removal. Manley alleges that during this unrecorded interval, Officers Rowley and Hammock punched, kicked, and stomped him while he was restrained in handcuffs and leg irons. The video pans back to Manley and shows him walking briefly, before officers begin carrying him by his shackles. Lifting an inmate by his restraints contravenes ESP training, but does not violate NDOC policy.

Manley alleges that he suffered numerous injuries as a consequence of this rough treatment. His prison medical records reflect various injuries and physical complaints, though they do not indicate the cause of his ailments. The record also shows that on July 2, 2009, Manley was under the influence of methamphetamine.

Manley was charged in a disciplinary proceeding for his July 2, 2009 conduct. Manley challenged the results of the disciplinary proceeding through the prison grievance process, wherein he claimed that the proceeding had not complied with prison procedural requirements. Thereafter, Manley received a new hearing, wherein the presiding officer found him guilty of disobeying a correctional employee, abusive language or actions, delaying, hindering, or interfering with a correctional employee in the performance of his duties, and assault and battery. Manley then filed a second grievance, wherein he argued that the second hearing was held outside of the 30-day timeframe required by A.R. 707(d)(1). Manley also claimed in his second grievance that he had "proved at [the] hearing" that he had called Officer Zimmer "requesting to be removed from [his] cell," but that "by the time someone responded to the cell [his] cell[mate] had already started the fight." Manley noted that Officer Zimmer "requested that [Manley's] cell be checked," and that neither "he [Zimmer] nor [the prison] [is] responsible for what happened in the cell." However, Manley also disclaimed any personal responsibility for what happened since he was left in the cell and had to defend himself. Finally, Manley requested that the "charges [] be dismissed due to information given that Manley requested to leave the cell before the fight." Manley's second grievance was denied, and he pursued it through two more levels of appeal, each of which denied his grievance.

Manley filed a complaint in the District Court of Nevada on July 22, 2011, and Appellees removed the matter to federal district court in the District of Nevada on September 1, 2011. Manley then filed an amended complaint, asserting claims for (1) deliberate indifference against Officer Alan Zimmer for failure to intervene, and (2) cruel and unusual

punishment against Officers Michael Rowley, Cameron Horsley, Glenn Hammock, and Scott Manning for their alleged use of excessive force in removing and restraining Manley on July 2, 2009, all in violation of the Eighth and Fourteenth Amendment.[1]  The parties filed cross-motions for summary judgment, and a magistrate judge issued a report recommending that the district court grant Appellees' motion in part and deny it in part, and that the court deny Manley's motion.  The magistrate judge recommended that the district court dismiss Manley's deliberate indifference claim against Officer Zimmer "without prejudice for failing to exhaust his administrative remedies."  The magistrate judge provided a detailed recitation of the evidence concerning Manley's excessive force allegation, and found that "a multitude of disputed facts preclude the court from entering summary judgment."

The district court adopted the magistrate judge's report and recommendation in part.  It found that Manley had failed to exhaust his administrative remedies against Officer Zimmer, but it declined to dismiss the claim without prejudice and instead granted summary judgment for Officer Zimmer, thereby finalizing the adjudication of that claim.  It also adopted the magistrate judge's findings of fact regarding Manley's excessive force claim, but rejected the recommended disposition, and granted summary judgment for Appellees.  In so doing, the district court rejected Manley's testimony about the events at issue.  The district court further commented that,

---

[1] Manley also asserted a supervisory liability claim against ESP Warden E.K. McDaniel and Officer Renee Baker.  Manley did not, however, appeal the district court's adjudication of this claim.

[a]dmittedly, the Court does not have an excellent track record with the Court of Appeals in granting summary judgment under similar circumstances, [citing four reversals of the district court in similar circumstances], but the Court of Appeals has an equally poor record with juries after remand, [citing jury verdicts in favor of the defendants in each of the four remanded cases], so this Court's record in finding that a reasonable jury could not find for a plaintiff is ultimately very good.

Manley now appeals the district court's grant of summary judgment on his deliberate indifference and excessive force claims.

## ANALYSIS

### I.  Manley's Excessive Force Claim

Courts may enter summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A party may oppose a motion for summary judgment by asserting "any of the kinds of evidentiary materials listed in Rule 56(c)," including declarations and affidavits.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "If, as to any given material fact, evidence produced by the moving party … conflicts with evidence produced by the nonmoving party … we must assume the truth of the evidence set forth by the nonmoving

party with respect to that material fact." *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013). **2**

We have refused to find a "'genuine issue' [as to a material fact] where the only evidence presented is 'uncorroborated and self-serving' testimony." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc*., 90 F.3d 1477, 1481 (9th Cir. 1996)). However, because a party's own testimony will nearly always be "self-serving," the mere self-serving nature of testimony permits a court to discount that testimony where it "states only conclusions and not facts that would be admissible evidence." *Nigro v. Sears, Roebuck and Co.*, 784 F.3d 495, 497–98 (9th Cir. 2015). Moreover, a court ruling on a motion for summary judgment may not engage in "[c]redibility determinations" or "the weighing of evidence," as those are functions reserved for the jury. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255 (1986).

---

**2** After briefing concluded on this matter, Appellees submitted a letter, purportedly pursuant to Fed. R. App. P. 28(j), accompanied by new evidence in support of summary judgment on Manley's excessive force claim. Manley then submitted a letter opposing Appellees' submission. We construe Manley's letter as a motion to strike Appellees' letter.

Rule 28(j) permits a party to file a letter alerting the court "[i]f pertinent and significant authorities come to a party's attention after the party's brief has been filed." Fed. R. App. P. 28(j). As we have previously stated, "Rule 28(j) permits a party to bring new *authorities* to the attention of the court; it is not designed to bring new evidence through the back door." *Trans-Sterling, Inc. v. Bible*, 804 F.2d 525, 528 (9th Cir. 1986) (emphasis in original). Manley's motion to strike is granted because Appellees' letter offers no new authorities, but rather seeks to supplement the record with new evidence.

The record in this case contains multiple issues of disputed material fact regarding Manley's excessive force claim. Manley contends that he was beaten by corrections officers during the period when the camera panned away from him; Appellees claim that no such beating occurred. The parties do not dispute that Manley was picked up by his wrist and leg restraints and carried horizontally to a holding cell. Manley, however, asserts that this was a wanton use of force that caused him extreme pain and violated ESP training, while Appellees claim that their actions were necessary to restore and maintain order—though they concede that it contravened officer training protocols.

Thus, the record indicates that a genuine dispute of material fact exists regarding whether Appellees' use of force resulted in the unnecessary and wanton infliction of pain or suffering. *See Hudson v. McMillian*, 503 U.S. 1, 5 (1992) (setting forth the standard for excessive force claims). The district court's conclusion to the contrary rested primarily on its finding that, due to Manley's ingestion of methamphetamine, his testamentary evidence was "so compromised as to be virtually worthless." However, this discounting of Manley's testimony constitutes the sort of credibility finding properly left for a jury. *See Santos v. Gates*, 287 F.3d 846, 851–54 (9th Cir. 2002); *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). Manley's testimony must be credited at this stage of the proceedings unless it is legally defective. *Anderson*, 477 U.S. at 255. Accordingly, we reverse and remand the district court's grant of summary judgment for Appellees on Manley's excessive force claim.

## II. Manley's Deliberate Indifference Claim

The Prison Litigation Reform Act of 1996 (PLRA), amended at 42 U.S.C. § 1997e, requires that inmates exhaust

their administrative remedies prior to bringing a court action to redress prison conditions or occurrences. *Id.* at § 1997(e)(a). This exhaustion requirement is mandatory, and "[a]ll available remedies must [] be exhausted; those remedies need not meet federal standards, nor must they be plain, speedy, and effective." *Porter v. Nussle*, 534 U.S. 516, 524 (2002) (quotation marks omitted).

The Supreme Court instructs that "exhaustion" under the PLRA requires compliance with both procedural and substantive requirements set forth by prison grievance processes in order to ensure that the prison receives the "opportunity to correct its own mistakes … before it is haled into federal court." *Woodford v. Ngo*, 548 U.S. 81, 89 (2006) (quotation marks omitted). The applicable procedures that a prisoner must exhaust "are defined not by the PLRA, but by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The district court correctly entered summary judgment on Manley's deliberate indifference claim because Manley failed to exhaust his administrative remedies. The second grievance filed by Manley did not put the prison on notice of Manley's deliberate indifference claim against Officer Zimmer; in fact, it specifically *disavowed* any assertion of liability on the part of Officer Zimmer or the prison. The prison therefore did not have the opportunity to respond to Manley's allegation on the merits, and the claim was not exhausted.

Manley argues that even if he failed to exhaust his deliberate indifference claim, the district court erred by granting summary judgment to Appellees rather than considering a stay to permit exhaustion. We decline to consider whether the district court committed any such error because it would be harmless in any event.

ESP regulations require that grievances be filed within six months of an alleged incident, and state that a prisoner's failure to file within that period constitutes abandonment of such grievance at all levels.  A.R. 740.05(4)(A), (8).  The Supreme Court has clarified that the unavailability of administrative remedies due to missed deadlines does not render such remedies "exhausted" under the PLRA, nor does it excuse a failure to exhaust.  *Woodford*, 548 U.S. at 90–93.  The incident giving rise to Manley's deliberate indifference claim occurred on July 2, 2009.  Accordingly, by the time the district court entered its order dismissing that claim on February 10, 2015, the time for filing a grievance had long since passed.  Because Manley failed to timely exhaust his deliberate indifference claim against Officer Zimmer, entry of summary judgment on that claim was appropriate.

## III.    Reassignment upon Remand

Manley asks that we reassign this case to a different district judge on remand.[3]  We will reassign a case to a new judge on remand only under "unusual circumstances or when required to preserve the interests of justice."  *United States v. Wolf Child*, 699 F.3d 1082, 1102 (9th Cir. 2012).  We need not find actual bias on the part of the district court prior to reassignment.  *Krechman v. Cty. of Riverside*, 723 F.3d 1104, 1111 (9th Cir. 2013).  Rather, we consider:

---

[3] Manley has also requested appointment of counsel, and an instruction that the district court consider appointing a guardian *ad litem*. We conclude that the magistrate judge did not abuse his discretion when he denied Manley's previous motion for appointment of counsel. However, we leave it to the discretion of the district court whether to appoint counsel and/or a guardian *ad litem* if Manley so moves upon remand.

> (1) whether the original judge would reasonably be expected upon remand to have substantial difficulty in putting out of his or her mind previously expressed views or findings determined to be erroneous or based on evidence that must be rejected, (2) whether reassignment is advisable to preserve the appearance of justice, and (3) whether reassignment would entail waste and duplication out of proportion to any gain in preserving appearance of fairness.

*Wolf Child*, 699 F.3d at 1102 (quoting *United States v. Quach*, 302 F.3d 1096, 1103 (9th Cir. 2002)). The mere erroneous grant of a party's motion does not warrant reassignment. *McSherry v. City of Long Beach*, 423 F.3d 1015, 1023 (9th Cir. 2005). However, the first two factors of the reassignment consideration—the reasonable expectation that a judge will have difficulty setting aside a prior determination, and whether reassignment is advisable to preserve the appearance of justice—are "equally important and a finding of either is sufficient to support reassignment on remand." *Krechman*, 723 F.3d at 1112 (citing *United States v. Jacobs*, 855 F.2d 652, 656 (9th Cir. 1988)).

In granting summary judgment for Appellees, the district judge conceded that he had previously been reversed by our court at least four times under "similar circumstances." He further claimed that because juries ultimately decided the four referenced cases in favor of the same parties for whom he had initially granted summary judgment, his record was "ultimately very good," and implied that we should, therefore, defer to his judgment.

By matching his own reversals in other "similar" cases with what he appears to construe as jury "reversals" of our rulings on appeal, the district judge describes a personal matrix wherein the ultimate finding of no liability by a jury justifies his prior entry of summary judgment for Appellees even if his doing so violated governing law. Taking such a position is highly unusual, and goes well beyond a mere legal error or offhand comment. It strongly suggests that the district judge will "have substantial difficulty in putting out of his . . . mind previously expressed views" when presiding over this matter on remand. His stated position also confirms that on remand we must reassign the case "to preserve the appearance of justice." *Wolf Child*, 699 F.3d at 1102. Finally, because no trial has yet occurred in this matter, any duplication of judicial efforts will be minimal if the case is reassigned on remand.

## CONCLUSION

For the reasons stated in this opinion, we affirm the district court's grant of summary judgment on Manley's deliberate indifference claims, reverse its grant of summary judgment on Manley's claim for excessive force, and remand with the instruction that this case be assigned to a different district judge. Each party shall bear its own costs on appeal.

AFFIRMED in part, REVERSED in part, and REMANDED.

O'SCANNLAIN, Circuit Judge, concurring in part and dissenting in part:

While I concur in the decision on the merits, I respectfully dissent from Part III, "Reassignment upon Remand." The district court's argument that past trial outcomes verify his ability to predict what a reasonable jury can find is certainly "highly unusual." It is also logically incoherent. Whether a specific jury finds for one party does not indicate that *every* reasonable jury would so find. Nevertheless, I disagree that the trial court's inappropriate comment "call[s] for the extraordinary measure of reassignment." *McSherry v. City of Long Beach*, 423 F.3d 1015, 1023 (9th Cir. 2005).

"We have reassigned cases based upon the 'appearance of justice' in few situations. . . . The common thread in these cases is that the district court's expressions of frustration with an attorney or party somehow *appeared* to affect his or her handling of the substantive issues in the case." *State of Cal. v. Montrose Chemical Corp. of California*, 104 F.3d 1507, 1521 (9th Cir. 1997). Judge Jones believes that he has predicted many trial outcomes, but that does not mean he would *interfere* with a trial to maintain his record. Reading such an impulse into his language assumes bad faith where none has been suggested.

Because there is no evidence that the district court's previous verbal excesses would affect its rulings during trial, the request for reassignment should be denied. *Compare Krechman v. City of Riverside*, 723 F.3d 1104, 1111–12 (9th Cir. 2013) (deciding not to reassign because judge's off-color comments about an expert's credibility did not indicate that the judge would be unable to apply the correct standard on remand) *and California v. Montrose Chem. Corp.*, 104 F.3d 1507, 1521–22 (9th Cir. 1997) (deciding not to

reassign because judge's repeated references to environmental scientists as "pointy heads" and "so-called experts" did not impact his substantive decisions) *with United States v. Jacobs*, 855 F.2d 652, 656–57 (9th Cir. 1988) (deciding to reassign where trial judge criticized the government's handling of the case in the jury's presence, offered strategic advice to one defendant, dismissed indictment in error, refused to reassemble the jury when the mistake was discovered two minutes later, and allowed defendants to file an untimely motion to dismiss).